[No. 20213-5-III.   Division Three.   April 2, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. KIRK ROBBINS KINDSVOGEL, *Appellant*.

*Douglas D. Phelps* and *Scott R. Staab* (of *Phelps & Associates*), for appellant.

*Steven J. Tucker, Prosecuting Attorney,* and *Kevin M. Korsmo* and *Andrew J. Metts III, Deputies,* for respondent.

SCHULTHEIS, J. — During an investigation of a domestic violence report, the victim showed police officers a marijuana grow operation in her house. The victim's husband, Kirk Kindsvogel, was arrested and charged with fourth degree assault (domestic violence). Several months after Mr. Kindsvogel pleaded guilty to disorderly conduct, he was charged with possession of marijuana with intent to manufacture. He moved to dismiss the marijuana charges for violation of his right to speedy trial. The motion was denied and Mr. Kindsvogel was convicted on stipulated facts of manufacture of a controlled substance—marijuana.

On appeal, Mr. Kindsvogel contends the time for trial period for the marijuana charges began to run when he was arraigned on the assault charge. He bases this argument on policies established in the application of CrR 3.3 and on Washington court decisions. Because we find that the two charges arose from the same criminal episode and that the

State unreasonably delayed bringing the marijuana charge, we reverse and dismiss.

## FACTS

The trial court issued findings of fact and conclusions of law in its denial of Mr. Kindsvogel's motion to dismiss. In the body of its response brief, the State challenges some of these findings. Because the State did not file a notice of cross-appeal and did not assign error to the findings, this court is precluded from considering the State's factual allegations. RAP 5.1(d); RAP 10.3(a)(3); *State v. Vanderpool*, 99 Wn. App. 709, 714, 995 P.2d 104 (2000). At any rate, most of the following facts are taken from police reports that were filed as supplemental records for this appeal.

On May 12, 2000, Sergeant Dave McCabe of the Spokane Police Department was off duty. He received a telephone call at his home from a family friend, Liana Kindsvogel. Ms. Kindsvogel told Sergeant McCabe that her husband had assaulted her and that he had a marijuana grow operation hidden in the basement of their home. Sergeant McCabe called in a report of domestic violence and marijuana manufacture. Two county sheriff's deputies responded and agreed to meet Sergeant McCabe at the residence. As the officers met on the front lawn, Mr. Kindsvogel arrived in his car and was detained while the officers investigated the domestic violence call. Ms. Kindsvogel let all of the men into the home, took officers to the basement grow operation, and consented to a search of the house. Eventually Mr. Kindsvogel was arrested and read his *Miranda*[1] rights. He waived his rights and admitted he was growing marijuana. Officers confiscated 26 plants. One week later, laboratory results confirmed that the plants were marijuana.

The record does not show when domestic violence charges were filed against Mr. Kindsvogel in district court, but he pleaded guilty to disorderly conduct on September 8, 2000. Over four months later, on January 16, 2001, the State filed

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

an information in superior court charging Mr. Kindsvogel with one count of possession of a controlled substance with intent to manufacture, RCW 69.50.401. He moved to dismiss before trial, arguing that the State violated his rights to mandatory joinder and speedy trial. The trial court found that the domestic violence charge and the controlled substance charge could have been joined permissively, and that the delay in filing the drug charge was prejudicial. However, the court denied the motion, concluding that the criminal acts had no "relationship" and were dissimilar in nature. Clerk's Papers at 16. Mr. Kindsvogel was found guilty of the charge on stipulated facts and now appeals.

ANALYSIS

Mr. Kindsvogel confines his appeal to the issue of speedy trial limits. He contends that both the domestic violence charge and the manufacture of marijuana charge arose from the same criminal episode. Citing *State v. Peterson*, 90 Wn.2d 423, 431, 585 P.2d 66 (1978) and *State v. Harris*, 130 Wn.2d 35, 44, 921 P.2d 1052 (1996), he asserts that the time for trial period began on the date he was held to answer on the first of these charges.

CrR 3.3 provides that a defendant has a right to be brought to trial within 90 days of the arraignment if the defendant is not held in custody, or within 60 days if incarcerated during that period. The State is primarily responsible for seeing that the defendant is tried in a timely manner, although the trial court is ultimately responsible for enforcing the speedy trial rule. *State v. Ross*, 98 Wn. App. 1, 4, 981 P.2d 888, 990 P.2d 962 (1999). In bringing the defendant to trial, the prosecution must uphold its duty in good faith and with due diligence. *Id.* The failure to comply with the speedy trial rules requires dismissal, whether or not the defendant can show prejudice. *Id.* at 5.

CrR 3.3 does not address those situations wherein multiple charges arise from the same criminal conduct or criminal episode. Consequently, in *Peterson*, 90 Wn.2d at

431, the Supreme Court looked to American Bar Association (ABA) standards to supplement the rule. Mr. Peterson was charged in district court with assault for shooting at police officers as he ran from a bank robbery. He was then tried and convicted on federal bank robbery charges. The State did not pursue the original assault charge. Two years after the federal conviction, he was charged in state superior court with two new assault charges that stemmed from the same shooting incident. Applying what is now 2 ABA, STANDARDS FOR CRIMINAL JUSTICE std. 12-2.2 (2d ed. 1980), *Peterson* held that the time for trial period for all crimes based on the same conduct or arising from the same criminal incident should begin whenever the defendant is held to answer any charge with respect to that conduct or episode. *Peterson*, 90 Wn.2d at 431. Recent cases have reinforced the viability of the *Peterson* rule. *See, e.g., State v. Lee*, 132 Wn.2d 498, 502-03, 939 P.2d 1223 (1997); *Harris*, 130 Wn.2d at 39-40; *Ross*, 98 Wn. App. at 5.

The key question is what constitutes "conduct involving a single criminal incident or episode." *Lee*, 132 Wn.2d at 503 (applying the *Peterson* rule to mandatory joinder). According to *Lee*, this conduct includes all offenses based on the same series of physical acts, or a series of acts constituting the same criminal episode. *Id.* These acts "could span a period of time and involve more than one place, such as one continuous criminal episode involving a robbery, kidnapping, and assault on one victim occurring over many hours or even days." *Id.* at 504. Usually the offenses will have been committed close in time or space. *Id.* at 503. A typical example is the vehicular stop that results in charges for a driving violation and a separate offense based on evidence discovered during the search incident to the arrest. *See, e.g., Ross*, 98 Wn. App. 1; *Harris*, 130 Wn.2d 35.

The defendant in *Ross* was arrested for driving under the influence (DUI). While searching the vehicle incident to the arrest, a trooper discovered methamphetamine. In June 1997, Mr. Ross was arraigned on charges of DUI and driving while his license was suspended. He was released

on bail. In July, the laboratory reported that the substance seized from the vehicle was methamphetamine. Mr. Ross pleaded guilty to the driving charges in August. Over a month later, he was arraigned on the charge of unlawful possession of methamphetamine. He unsuccessfully moved to dismiss for speedy trial violation.

On appeal, Division Two of this court found that the methamphetamine charge stemmed from the same criminal episode involving the driving charges. *Ross*, 98 Wn. App. at 5-6. Thus, the court continued, the State had an obligation to bring the defendant to trial on all the charges "in good faith and with due diligence." *Id.* at 6. However, the court felt bound by the decision in *State v. Fladebo*, 113 Wn.2d 388, 779 P.2d 707 (1989), which conditioned application of the *Peterson* rule on whether the State's delay in filing the charges was understandable and justified. *Ross*, 98 Wn. App. at 5. Consequently, *Ross* was remanded to the trial court to determine whether the State had good reason to delay filing the possession charge for nearly two months after the laboratory report was released. *Id.* at 6.

The Supreme Court in *Harris* did not feel bound by the balancing test employed in *Fladebo*. Noting that the two charges in *Fladebo* were brought in different courts with exclusive jurisdictions (municipal court and superior court) and were prosecuted by different prosecutorial authorities, *Harris* held that the *Peterson* rule applies if the related charges are under the jurisdiction of the same court. *Harris*, 130 Wn.2d at 42. In *Harris*, a case involving the juvenile speedy trial rule, JuCR 7.8, Mr. Harris was cited for driving without a valid license. When the officer ran a computer check on the vehicle, he discovered it was stolen. Mr. Harris was charged in district court with driving without a license and pleaded guilty. Over four months after his guilty plea, he was charged in superior court with taking a motor vehicle without the owner's permission. Although the State "wisely concede[d]" that the first and second charges arose from the same criminal conduct, it argued that the *Peterson* rule did not apply to multiple but

related charges filed in different courts. *Id.* at 41. The Supreme Court held that although Mr. Harris's first charge was in district court and his second charge was in superior court, both charges were prosecuted by the same authority and under the jurisdiction of the superior court. *Id.* at 42 (citing RCW 2.08.010). Consequently, the second charge was filed beyond the speedy trial limits established by the arraignment on the first charge. *Id.*

In the present case, evidence of domestic violence and the marijuana grow operation was gathered at the Kindsvogels' home during the police response to a report of these crimes. According to police reports, Ms. Kindsvogel stated that she and her husband "continually argued" about the grow operation. Clerk's Papers at 39. Only the week before, she had taken photographs of the plants as evidence after an argument. She worried that their children could access the grow area. On the morning of the assault, she and Mr. Kindsvogel argued; he went to the garage to smoke marijuana, returned, and hit her. Consequently, she called Sergeant McCabe and reported both the assault and the marijuana grow operation. From these facts, a reasonable person would conclude that the two charges that arose from the subsequent investigation stemmed from the same criminal episode or conduct.

Unlike in *Fladebo*, where laboratory results on the second crime were not received until after the defendant had negotiated a plea on the first charge, here the laboratory results confirming the identity of the marijuana plants were issued nearly five months before Mr. Kindsvogel pleaded guilty to disorderly conduct. The State offers no explanation for the delay in bringing the marijuana charge.

Because Mr. Kindsvogel's two charges arose from the same criminal episode and were under the jurisdiction of the same court and prosecutorial authority, arraignment on the domestic violence assault charge began the time for trial period. *Harris*, 130 Wn.2d at 42. Although the record does not reveal the date of the arraignment on the first charge, arraignment on the second charge was four months

758

after the guilty plea on the first charge, clearly beyond the 90-day time for trial period of CrR 3.3. Mr. Kindsvogel timely asserted his speedy trial rights and the State did not request a continuance. *See Harris*, 130 Wn.2d at 44-45. Consequently, the trial court erred in denying Mr. Kindsvogel's motion to dismiss the marijuana charge for speedy trial violation.

Reversed and dismissed.

KATO, A.C.J., and KURTZ, J., concur.

Review granted at 147 Wn.2d 1020 (2002).