[No. 46431.   En Banc.   October 9, 1980.]

THE STATE OF WASHINGTON, *Appellant,* v. REX CHARLES WHITE, *Respondent.*

*Grant S. Meiner, Prosecuting Attorney,* and *Kenneth L. Cowsert, Deputy,* for appellant.

*John Henry Browne* and *John Winn Wolfe,* for respondent.

HICKS, J.—Defendant Rex Charles White was charged with rape. At his December 19, 1977, preliminary hearing, bail was set at $50,000, which he was unable to post. White's arraignment was held December 22, 1977, and the following colloquy occurred:

THE COURT: Mr. White, to the charge of Rape in the First Degree, said to have been committed in this county on the 17th day of July, 1977, what is your plea, Guilty or Not Guilty?

MR. WHITE: Not Guilty, Your Honor.

THE COURT: Enter a plea of Not Guilty. We'll set the matter down for trial. He's incarcerated presently?

[DEFENSE COUNSEL:] He is and there's essentially no chance of his posting bail, Your Honor. For that reason I would suggest an early trial date; I notice on my calendar that on January 11th there are two cases which very probably will not go to trial; one I'm quite certain State v.—*Mr. White has indicated that he would be perfectly willing to set a trial date in February, Your Honor.*

THE COURT: How long will the trial take?

[DEFENSE COUNSEL:] I suspect two days.

[PROSECUTOR:] Except for the seriousness of the offense it could probably be squeezed into one day. I would anticipate that there will be some extensive cross–examination, two days would be sufficient.

THE COURT: State v. Steadman, does anyone know about this case?

[DEFENSE COUNSEL:] Mr. Steadman was a client sometime ago and to the best of my knowledge—

THE COURT: February 22nd and 23rd [1978]; there's no criminal case on Judge Chamberlin's calendar, I will put the case down there, with an Omnibus Hearing—

(Italics ours.) The February 22 trial date was 66 days after the preliminary hearing—6 days beyond the maximum for a defendant in custody.

One day before the trial date, defendant moved for dismissal under CrR 3.3. The trial court denied the motion and following trial White was convicted of second degree rape. He appealed to the Court of Appeals.

In order to retain its victory on appeal, it was incumbent upon the State to distinguish past decisions of this court directed at noncompliance with CrR 3.3. The State recognized its burden and sought to meet it by arguing that defendant waived his right to trial within 60 days in the colloquy set forth above. The Court of Appeals disagreed, reversed the trial court and dismissed the case with prejudice. *State v. White,* 23 Wn. App. 438, 597 P.2d 420 (1979).

We agree with the Court of Appeals and adopt its opinion as our own in this case. Except for RAP 13.2,[1] as it then existed, it is unlikely this matter would have been accepted for review in this court.

The case was decided by a divided Court of Appeals. The dissenting judge noted that our court adopted speedy trial rule is not the equivalent of the constitutionally mandated rule and urged this court to retreat from its rigid enforcement of CrR 3.3. Further, he urged that in the interest of justice "the draconian remedy of dismissal be avoided" and that we waive the rule in this instance. *White,* at 444.

At the time relevant, CrR 3.3 read in pertinent part:

(a) **Responsibility of Court.** It shall be the responsibility of the court to insure to each person charged with crime a speedy trial in accordance with the provisions of this rule.

. . .

---

[1]RAP 13.2(a) then read as follows:

"A party may appeal from a Court of Appeals decision terminating review only if the trial court decision has been reversed and the Court of Appeals decision is not unanimous and only if the party has filed a timely motion for reconsideration under Rule 12.4."

RAP 13.2 rescinded, 93 Wn.2d 1102, effective June 7, 1979.

**(c) Priority Over Civil Cases.** . . . A defendant unable to obtain pretrial release shall have priority and the charge shall be brought to trial within 60 days following the preliminary appearance.

. . .

**(g) Dismissal With Prejudice.** A criminal charge not brought to trial as required by this rule shall be dismissed with prejudice.

■ At the outset, we acknowledge that, while founded upon the constitutional right to a speedy trial, the 60–day trial rule for a defendant in custody prescribed by CrR 3.3 is not of constitutional magnitude. *State v. Mack,* 89 Wn.2d 788, 576 P.2d 44 (1978).

■ CrR 3.3, or some version of it, has been in effect since 1973. It has undergone a number of amendments. Even as this opinion is being prepared, the rule has again undergone a substantial revision, hopefully one that will obviate the need for further consideration of cases such as this in the future. Since 1973, throughout the various changes and revisions, we have consistently insisted upon strict compliance with the rule and a sanction of dismissal with prejudice in those instances where the rule was not followed. CrR 3.3(g); *State v. Williams,* 85 Wn.2d 29, 530 P.2d 225 (1975); *State v. Striker,* 87 Wn.2d 870, 557 P.2d 847 (1976); *State v. Peterson,* 90 Wn.2d 423, 585 P.2d 66 (1978); *State v. Alexus,* 91 Wn.2d 492, 588 P.2d 1171 (1979); *State v. McIntyre,* 92 Wn.2d 620, 600 P.2d 1009 (1979).

As may be ascertained from a review of *State v. Williams, supra,* the first case which we considered under CrR 3.3, unanimity did not exist on the court. Most of the issues raised by the dissent in the Court of Appeals, plus some others, were vigorously argued by Justice Hale in dissent. He did not prevail.

■ Since *Williams,* numerous appeals have been before this court concerning various aspects of CrR 3.3. We have adhered to the basic principle underlying the rule, that it is in the best interest of all concerned that criminal matters be tried while they are fresh.

To assure compliance with the early trial rule, we have felt it necessary to reenforce it with the sanction of dismissal with prejudice in those instances of noncompliance. On the infrequent occasion when noncompliance with CrR 3.3 does occur, as in this instance, a defendant who may have been found guilty avoids the maximum punishment of the law. Considerable emotion may ensue following a dismissal in such a case.

Here, the dissent in the Court of Appeals focuses on the unjust result occasioned between society and this particular defendant. We focus on the unjust results that routinely occurred in pre–CrR 3.3 days. Then, it was commonplace for trials to be delayed for many months. Witnesses became unavailable, memories dimmed, evidence disappeared, and charges were required to be reduced or dismissed. We continue to be convinced that many more injustices between society and defendants are avoided as a result of the adoption of CrR 3.3 than occur because of it. *See generally* L. Katz, *Justice Is the Crime: Pretrial Delay in Felony Cases* (1972). Nonetheless, we wish to avoid all unjust results. Thus, we continue to revise the rule from time to time in a continuing effort to achieve early trials in all cases and no dismissal with prejudice in any case.

The dissent in the Court of Appeals raises the point that defendant's trial counsel had a duty at the trial setting to apprise the court that his willingness to accept a February trial date did not include 1 more than 60 days beyond the date of initial appearance. CrR 3.3, as it was then written, provided in part, "It shall be the responsibility of the court to insure to each person charged with crime a speedy trial in accordance with the provisions of this rule."

An attorney is an officer of the court. As such, he owes it a duty of frankness and honesty. His primary duty, of course, is to his client. Nonetheless, we are inclined to agree that if at the trial setting defendant's counsel was aware that the trial date fixed was beyond the 60–day limit, he

had a duty to so advise the court.[2] The rule at that time, however, placed the responsibility for a correct trial date upon the court and we, of course, do not know when counsel became aware of the erroneous date. While counsel may protest that his duty to his client forbade him advising the court of its mistake at the time the trial date was fixed, we would disagree. The selection of a proper trial date is a mutual task with ultimate responsibility in the court. It is our view that counsel best serves both his client and the adversary system by assuring compliance with the rule when trial dates are set. Had we any indication counsel was in any way attempting to mislead the court or, in this instance, that he recognized the court had fixed an erroneous date and remained silent, our view would be different. We have no such indication.

Finally, the dissent in the Court of Appeals invites us to bend the rule in this particular instance in the interest of justice. We conclude that we should remain consistent with past decisions and we decline the invitation.

The Court of Appeals is affirmed.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and WILLIAMS, JJ., concur.

---

[2]*See* (CPR) EC 7–23. If a lawyer owes a duty to the court to advise it of adverse (to him) legal authority from the controlling jurisdiction, surely it follows that he must advise the court that it is selecting an incorrect trial date, if he knows that is occurring.